IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIGENE LABORATORIES, INC. AND UPSHER-SMITH LABORATORIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> APOTEX, INC. AND APOTEX CORP., <br><br> Defendants. | No. C 07-80218 SI <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO QUASH SUBPOENA** |

Defendants have filed a motion to quash plaintiffs' subpoena. Hearing on the motion is currently scheduled for October 11, 2007. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for submission without oral argument, and hereby VACATES the October 11 hearing. For the reasons set forth below, the Court GRANTS defendants' motion to quash.

**BACKGROUND**

The discovery issue before this Court arises from a patent litigation currently pending in the District Court for the Southern District of New York. The parties seek resolution of a dispute regarding plaintiffs' request to depose one of defendants' former attorneys, who participated in matters related to the ongoing patent litigation.

Plaintiffs possess the patent rights to Fortical®, a Food and Drug Administration ("FDA") approved nasal spray used to treat post-menopausal osteoporosis. *See* claim 19 of U.S. Patent No. 6,440,392 ("'392 patent"). In an effort to manufacture a generic version of this product, defendants filed an Abbreviated New Drug Application ("ANDA") with the FDA. On June 1, 2006, in compliance with

the statute governing ANDA filings, defendants sent plaintiffs a Certification Letter[1] that detailed defendants' belief that the '392 patent was invalid and unenforceable. Following an investigation of the arguments set forth by defendants in the Certification Letter, plaintiffs filed suit in the Southern District of New York on July 24, 2006, alleging patent infringement. *See* 35 U.S.C. § 271(e)(2) (stating that "[i]t shall be an act of infringement to submit . . . an application under [the Federal Food, Drug, and Cosmetic Act] . . . if the purpose of such submission is to obtain approval . . . to engage in the commercial manufacture, use, or sale of a drug . . . claimed in a patent . . . before the expiration of such patent.").

As part of discovery, plaintiffs seek to depose Dr. Lynn M. Terrebonne. From October 2003 to November 2006, Dr. Terrebonne worked as an associate attorney for Caesar, Rivise, Bernstein, Cohen & Pokotilow, Ltd. ("Caesar Rivise"), the firm that represents defendants in the patent litigation. The Certification Letter required the inclusion of factual and legal contentions and therefore both employees of defendants and Caesar Rivise attorneys, such as Dr. Terrebonne, participated in its drafting. Dr. Jeremy B. Desai, the Executive Vice President of Research and Development of Apotex, Inc., signed the letter and defendants assert that other Apotex personnel, such as Dr. Gilbert Banker and Anita Hui, possess knowledge of the facts surrounding the drafting of the letter.

After improperly subpoenaing Dr. Terrebonne on August 10, 2007, plaintiffs issued another subpoena on August 20, 2007, this one from the Northern District of California. The subpoena called for documents to be produced on September 6, 2007, and for the deposition of Dr. Terrebonne on September 10, 2007. Three days after the issuance of the subpoena, on August 23, 2007, Dr. Terrebonne and defendants provided written objections to the subpoena. On August 24, 2007, in partial compliance with the subpoena, Dr. Terrebonne gave to Caesar Rivise documents she had in her possession. Caesar Rivise then turned over to plaintiffs those documents that were not privileged attorney-client communications and/or attorney work product and also provided plaintiffs with a privilege log, identifying the privileged documents that were not produced. Finally, on September 4, 2007, defendants

---

[1] The Federal Food, Drug, and Cosmetic Act requires an ANDA applicant to give the owner of the patent notice detailing the factual and legal basis of the applicant's opinion that the patent is invalid and will not be infringed. *See* 21 U.S.C. §§ 355(j)(2)(B)(i), (ii).

2

filed this motion to quash the subpoena. Plaintiffs have subsequently filed a cross-motion to compel the deposition of Dr. Terrebonne.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(a)(1)(c), any party may serve a subpoena commanding a nonparty "to attend and give testimony or to produce and permit inspection and copying of" documents. Fed. R. Civ. P. 45(a)(1)(C). The subpoena is subject to the relevance requirements set forth in Rule 26(b). *See* The Rutter Group, *Federal Civil Procedure Before Trial* § 11:2305 (2007). Thus, the subpoena may command the production of documents which are "not privileged" and are "relevant to the subject matter" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Upon a timely motion, the court issuing such a subpoena shall quash it if it determines that the subpoena "requires disclosure of privileged or other protected matter and no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).

Additionally under Rule 45, a person commanded to produce documents may serve a written objection to the subpoena. *See* Fed. R. Civ. P. 45(c)(2)(B). After a written objection has been made, the party serving the subpoena may not have access to the requested documents absent a court order, but may at any time move for an order to compel document production. *Id.*; *see also* Fed. R. Civ. P. 37(a) (any party may upon "reasonable notice" request an order compelling discovery or disclosure).

While a nonparty may challenge a subpoena *duces tecum* via written objection, a deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule 26(c). *See* 9 James Wm. Moore, *Moore's Federal Practice* § 45.30 (2007) ("The written objection procedure is available only for a subpoena commanding production or inspection . . ."). A motion to quash or modify "must be made promptly," allowing it to "be heard *and granted before* the scheduled deposition." *See* The Rutter Group, *Federal Civil Procedure Before Trial* § 11:2288 (2007) (emphasis in original).

Pursuant to Northern District Local Rule 37-2, a party moving to compel discovery must "detail the basis for the party's contention that it is entitled to the requested discovery and must show how the proportionality and other requirements of Fed. R. Civ. P. 26(b)(2) are satisfied." *See also* Fed. R. Civ.

3

1 P. 26(b)(2) (requiring that when determining the appropriateness of discovery requests courts should
2 consider whether the discovery is duplicative or overly burdensome and whether the burden and expense
3 of discovery outweighs the benefit). The court has discretion to determine whether to grant a motion
4 to compel. *See Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987).

**DISCUSSION**

Defendants seek to quash the subpoena for the deposition of Dr. Terrebonne because deposing her would require her to disclose privileged attorney-client communications regarding the circumstances surrounding the Certification Letter. *See* Fed. R. Civ. P. 45(c)(3)(A)(iii). "Under the attorney-client privilege, confidential communications made by a client to an attorney to obtain legal services are protected from disclosure." *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992) (citing *Fisher v. U.S.*, 425 U.S. 391, 403 (1976)). In the context of patent litigation, there is a division of authority about the scope of the attorney-client privilege. *Compare Jack Winter, Inc. v. Koratron Co., Inc.*, 54 F.R.D. 44, 47 (N.D. Cal. 1971) (communications between patent lawyer and client concerning technical information necessary for the patent application are generally not protected by the privilege) *with Knogo Corp. v. U.S.*, 213 U.S.P.Q. 936 (Ct. Cl. 1980) (courts should apply the normal requirements of the attorney-client privilege to technical communications, because the patent application process is a cooperative effort between attorney and client); *see also In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000). This Court has followed the *Knogo* approach "because technical information communicated to a patent attorney does not warrant different treatment than any other information communicated to an attorney in the process of obtaining legal services." *Teknowledge Corp. v. Akamai Tech.*, No. C 02-5741, 2004 WL 2480705, at *2 (N.D. Cal. Aug. 10, 2004).

In this instance, plaintiffs put forth two main contentions in support of their desire to depose Dr. Terrebonne: (1) Dr. Terrebonne has non-privileged information regarding the underlying facts of the Certification letter; and (2) plaintiffs cannot attain the information surrounding the Certification Letter through other employees of defendants.

Plaintiffs seek to depose Dr. Terrebonne because, as a participant in the drafting of the Certification Letter, she has knowledge of the underlying facts surrounding defendants' contention that

4

the '392 patent is invalid and unenforceable. They claim those facts are relevant to the pending litigation because they relate to the claims and prosecution history of the '392 patent and the alleged prior art. *See* Pls.' Opp'n Mem. 7:2-3. Defendants contend that the attorney-client privilege protects any relevant information Dr. Terrebonne may possess regarding the Certification Letter. Plaintiffs do not dispute that the attorney-client privilege applies and do not argue that defendants waived the privilege by any means, such as by asserting an advice of counsel defense. Instead, plaintiffs argue that Dr. Terrebonne possesses certain non-privileged information regarding the Certification Letter and, thus, should be deposed for that information. Plaintiffs provide no explanation of what non-privileged, relevant information she could offer. Thus, the Court disagrees with plaintiffs and finds the deposition of Dr. Terrebonne futile since any information relevant to the controversy, whether technical or legal, falls within the protection of the attorney-client privilege.

Additionally, plaintiffs indirectly argue that principles of fairness favor declining application of the attorney-client privilege here because plaintiffs cannot discover the information they seek from defendants' other employees. They set forth two arguments to support this proposition. First, plaintiffs contend that depositions of two employees deemed "most knowledgeable" by defendants with respect to the patent litigation revealed little about the underlying facts of the Certification Letter. Second, plaintiffs rely on a response made by defendants' counsel at a hearing on September 12, 2007, in which he stated "[the Certification Letter] was written by counsel." *See id.* at Ex. C. The Court finds both arguments unpersuasive. Defendants, in response to interrogatories, listed eight employees, in addition to Dr. Terrebonne, who have knowledge of the facts involved in the Certification Letter. *See* Chien Decl. at Ex. B. Although plaintiffs remain unsatisfied with the results from depositions of two employees on that list, six others remain who defendants claim have the factual knowledge plaintiffs desire. Furthermore, accepting that only counsel wrote the Certification Letter does not lead to the conclusion that no other employees possess knowledge of the facts involved in the letter's creation, especially in light of defendants' list of knowledgeable employees. Although respecting the attorney-client privilege can result in the withholding of relevant information from the factfinder, it is generally acknowledged that "[c]ommunications within the scope of the [attorney-client] privilege are zealously protected." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and*

5

*Procedure* § 2017 (2007); *see also Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 862 (3d Cir. 1994) (stating that "[a]s the privilege serves the interests of justice, it is worthy of maximum legal protection") (citing *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992)).

The Court concludes that circumstances here do not justify piercing the attorney-client privilege and, thus, pursuant to Federal Rule of Civil Procedure 45(c)(3)(A)(iii), the Court must quash the subpoena because the deposition of Dr. Terrebonne would require disclosure of information protected by attorney-client privilege.[2]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motion to quash the subpoena and DENIES plaintiffs' cross-motion to compel as moot. (Docket Nos. 1 and 19).

**IT IS SO ORDERED.**

Dated: October 10, 2007

SUSAN ILLSTON
United States District Judge

---

[2] As the protections of the attorney-client privilege alone warrant quashing the subpoena, the Court does not address defendants' attorney work-product argument. Additionally, given the short time frame between the issuance of the subpoena and the deposition, as well as the timely objection to the deposition made by defendants and Dr. Terrebonne three days after the issuance of the subpoena, defendants' filing of the motion to quash was timely.

6